## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JAMES K. TRACY,<br>　　　　Plaintiff,<br><br>v.<br><br>JEFF STEPHENS, JON RITCHIE, JAN BURRELL, DEAN OBORN, DOUGLAS HURST, JANIS CHRISTENSEN, PAUL WIDDISON, BRUCE JARDINE and WEBER SCHOOL DISTRICT,<br>　　　　Defendants, | **ORDER FINDING MOTIONS [34, 36] TO DISMISS MOOT, ORDER DENYING MOTION TO STRIKE [42], ORDER DENYING MOTION FOR SANCTIONS [48] AND REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT [42] AND DEFENDANTS' SECOND MOTION TO DISMISS [41]** |
| ALENA ERICKSEN and MIKEL BROWN,<br>　　　　Consolidated Plaintiffs, | Case No. 1:21-cv-000152-TC-CMR |
| v. | District Judge Tena Campbell |
| REID NEWEY, JOHN ROBISON, MARIE STEVENSON, LIZ MUMFORD, JULIE TANNER, BRIGHT GERRARD, GORDON ECKERSLEY, CHERYL PHIPPS, and DAVIS SCHOOL DISTRICT,<br>　　　　Consolidated Defendants | Magistrate Judge Cecilia M. Romero |

These consolidated cases are referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(B) (ECF 30). Before the court are Weber School District Defendants' Motion to Dismiss (ECF 34), Davis School District Defendants' Motion to Dismiss (ECF 36), and all Defendants' Second Motion to Dismiss (ECF 41). Also pending before the Court are Plaintiffs' combined Motion to Strike and Motion for Default (ECF 42) and Plaintiffs' Motion for Rule 11 sanctions (ECF 48). All motions are addressed in this Order and report and recommendation.

1

Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter on the materials presented in the written memoranda. *See* DUCivR 7-1(g). For the reasons set forth below the undersigned finds the first two Motions to Dismiss are MOOT (ECF 34, 36), DENIES the Motion to Strike (ECF 42), DENIES the Motion for Rule 11 Sanctions (ECF 48) and RECOMMENDS the Plaintiffs' Motion for Default (ECF 42) be DENIED, and the Defendants' Second Motion to Dismiss be GRANTED (ECF 41).

## I.     BACKGROUND

This is an action brought by Plaintiffs initially brought in two separate cases which have been consolidated in the present matter, representing themselves, contesting the Covid-19 protocols implemented by two Utah school districts. As alleged in the Amended Complaint, each school district's reopening plans included requirements for face coverings worn by students, physical distancing, isolation after exposure, and remote learning at certain points. Plaintiffs bring this action under 42 U.S.C. § 1983 (ECF 39 at Count 1) alleging a variety of state and federal constitutional violations. They also allege the reopening plans were the result of a conspiracy pursuant to 42 U.S.C. § 1985(3) (ECF 39 at Count Two), violated their federal and state constitutional rights (ECF 39 at ¶¶ 91–101), and are actionable through several state law tort claims (ECF 39 at Counts Three, Four, Five, and Six).

The Plaintiff in the present matter, case No. 1:21-cv-000152 (Case 152), James K. Tracy (Tracy Plaintiff), filed his action on behalf of his minor children against Weber School District and several individuals (collectively, "Weber School District Defendants").[1] The Plaintiffs in case

---

[1] The individually-named Defendants in Case 152 are: Jeff Stephens, Jon Ritchie, Jan Burell, Dean Osborn, Douglas Hurst, Janis Christensen, Paul Widdison, and Bruce Jardine (referred to collectively as Weber Individual Defendants or in conjunction with Weber School District as Weber School District Defendants).

No. 1:21-cv-000153 (Case 153), Alena Ericksen and Mikel Brown (Ericksen/Brown Plaintiffs), filed their action against Davis School District and several individuals (collectively, "Davis School District Defendants").[2] Tracy Plaintiff and Ericksen/Brown Plaintiffs are referred to collectively herein as Plaintiffs.

The procedural history of this case is complex and includes several filing defects which impact the undersigned's analysis of the pending motions. Case 152 and Case 153 were consolidated into Case 152 on January 5, 2022 (ECF 31, 37). Weber School District Defendants filed their Motion to Dismiss on January 13, 2022 (ECF 34). Davis School District Defendants filed their Motion to Dismiss on January 21, 2022 (ECF 36). On February 2, 2022, the Plaintiffs filed a joint reponse in opposition to both motions to dismiss (ECF 38). Also on February 2, 2022, Plaintiffs filed an Amended Complaint (ECF 39). The Amended Complaint identifies all Plaintiffs in the caption (ECF 39 at 1), and it is signed by all Plaintiffs (ECF 39 at 33). Plaintiffs' consolidated response brief to the two motions to dismiss (ECF 38) expressly notes that Plaintiffs were concurrently filing an Amended Complaint to address some of the defects pointed out in the motions to dismiss (ECF 38 at 3). Notwithstanding the caption and signature, the Amended Complaint addresses only Plaintiff Tracy and the Weber School District Defendants (ECF 39 at 6–7). It alleges no injuries against the Ericksen/Brown Plaintiffs or any conduct by Davis School District Defendants or the individually-named Defendants in Case 153. (ECF 39).

Notwithstanding the defect in pleading by only one Plaintiff against only one set of Defendants, all Defendants then jointly filed a Second Motion to Dismiss the Amended Complaint

---

[2] The individually-named Defendants in Case 153 are: Reid Newey, John Robison, Marie Stevenson, Liz Mumford, Julie Tanner, Brigit Gerrard, Gordon Eckersley, and Cheryl Phipps (referred to collectively as Davis Individual Defendants or in conjunction with Davis School District as Davis School District Defendants) .

on February 23, 2022 (ECF 41), seeking dismissal of that Amended Complaint against not only

the Davis and Weber School Districts but all individuals. That Second Motion to Dismiss was filed

seven days late, which Defendants concede. On March 4, 2022, the Plaintiffs jointly moved to

strike the February 23 Second Motion to Dismiss and moved for entry of default within the same

filing (ECF 42). Plaintiffs filed no other response to the Second Motion to Dismiss. On April 6,

2022, Planitiffs also filed a Motion for Rule 11 Sanctions (ECF 48) which was opposed on April

15, 2022 (ECF 50).  Plaintiffs submitted their reply on April 27, 2022 (ECF 51).

## II.      THE FIRST TWO MOTIONS TO DISMISS ARE MOOT

After considering the pleadings and various filings in this matter, it appears that Plaintiffs

timely filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). A

party may file an amended pleading as a matter of course within twenty-one days after service of

a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). Plaintiffs' Amended Complaint was filed

February 2, 2022 (ECF 39) which is within the twenty-one day period. Plaintiffs also filed a

response to the motions to dismiss on February 2, 2022 which muddled the procedural posture in

this matter (ECF 38). Plaintiffs represents themselves pro se, and the Court recognizes the rule that

pro se litigants can be afforded some leniency when the court evaluates pro se filings. *E.g.*, *Keeler*

*v. Aramark*, 418 F. App'x 787, 791 (10th Cir. 2011).

It is well-established that an "amended complaint supersedes the original complaint and

renders the original complaint of no legal effect." *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x

730, 734 (10th Cir. 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *see also*

*Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). The first two motions to dismiss

(ECF 34, 36) are therefore moot. The Plaintiffs' consolidated reponse to those motions (ECF 38),

filed on February 2, 2022, is also moot. *Howeth v. Aramark Corp.*, Case No. 2:10-cv-221-TS, 2011 WL 1428087, at \*2 (D. Utah Apr. 13, 2011); *Buckles v. Bride Club*, Case No. 2:08-cv-00849, 2010 WL 3190751 at \*1 (Aug. 11, 2010); *Terry v. Hinds*, Case No. 2:05-cv-776 TS, 2006 WL 8457537 at \*1 (June 14, 2006). *See also Edwards v. Hanuman Corp.*, Case No. 1:21-cv-01180-KWR-LF, 2022 WL 1156639 at \*1 (April 19, 2022) ("Because the amended complaint supersedes the original complaint, Defendant Hanuman's motion to dismiss the original complaint is directed at an inoperative pleading, rendering it moot."); *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1323–24 (D. Colo. 2019).

Therefore, the Amended Complaint is the pleading pending against all Defendants (ECF 39). The operative motion to dismiss is the Second Motion to Dismiss filed February 23, 2022 (ECF 41). Before addressing the merits of that Second Motion to Dismiss the court must address Plaintiffs' Motion to Strike (ECF 42).

### III.    MOTION TO STRIKE IS DENIED

The procedural posture of the joint Motion to Strike (ECF 42) is unusual. Despite its caption as a "Motion to Strike Sham Filing, Motion for Entry of Default and Memorandum of Law in Support," the filing appears to be three things: (1) a response to the Second Motion to Dismiss, (2) a Motion to Strike the Second Motion to Dismiss, and (3) a Motion for Entry of Default.

### A.  Motion to Strike Improper Under Rule 12(f).

The Motion to Strike (ECF 42) is denied because the motion is procedurally improper. Rule 12(f) of the Federal Rules of Civil Procedure provides that on motion made by a party, the court may "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2) (emphasis added). "By its express language, Rule

12(f)(2) applies only to material contained in *pleadings—not to motions*" and "can only be used to strike portions of pleadings." *Gardner v. Long*, No. 2:18-CV-00509, 2020 WL 1325338, at *6 (D. Utah Mar. 20, 2020). This rule is well held in this District and in the Tenth Circuit. "[N]o provision in the [Federal Rules of Civil Procedure] authorizes motions to strike other motions." *Sevier v. Thompson*, No. 2:16-CV-00659-DN-EJF, 2017 WL 11528738, at *1 (D. Utah Oct. 13, 2017) (noting that "courts in the Tenth Circuit have repeatedly denied motions to strike other motions").

### B. Striking Motion to Dismiss Would Be Futile and Delay Litigation

Other courts in this district have held in similar cases involving an untimley filing (here, the untimely Second Motion to Dismiss), that if the party moving to dismiss can promptly repeat the same arguments from its motion to dismiss through a different procedural vehicle such as a motion for judgment on the pleadings, that possibility weighs against striking a motion to dismiss. *E.g.*, *Zemaitiene v. Salt Lake County*, Case No. 2:17-cv-00007-DAK-JCB, 2020 WL 6151610, at *3, (denying a motion to strike an untimely filed motion to dismiss (1) pursuant to Rule 12(f), (2) because no prejudice was shown, and (3) because the substantive relief could be refiled through a motion for a judgment on the pleadings), *vacated in part on other grounds*, 2022 WL 1013811 (10th Cir. April 5, 2022).

In this case, Plaintiffs assert no prejudice as a result of the late filing of the Second Motuion to Dismiss for the court to consider. To deny the motion to dismiss and wait for it to be refiled as a motion for judgment on the pleadings would risk elevating form over function and unncessarily extend this litigation. Neither appear to be appropriate in this case where no prejudice by the late filing has been alleged or demonstrated. As noted above, this case has been engaged in active

litigation with ample filings made by Plaintiffs despite the untimely filing of the Second Motion to Dismiss. The Motion to Strike is therefore denied but counsel is reminded to ensure they comply with all the time periods set out in the Local Rules.

### C. Equities and Leniency Warrant Consideration of Plaintiffs' Substantive Arguments in the Motion to Strike as a Response to the Second Motion to Dismiss

Plaintiffs' Motion to Strike also appears to include Plaintiffs' response to the Second Motion to Dismiss. While Local Civil Rule 7-1(a)(3) prohibits the filing of a separate motion in a response brief, the in this instance, the court will consider the embedded response material under the rule that pro se litigants can be afforded some leniency when the court evaluates pro se filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is "to be liberally construed," . . ."); *Keeler*, 418 F. App'x at 791; *Treadwell v. Holt*, 42 F. App'x 86, 87 (10th Cir. 2002) ("This court construes pro se complaints liberally. We extend this liberal construction principle to pro se appellate filings as well."). The undersigned discerns that the Motion to Strike (ECF 42) is a multi-part filing, including the Motion to Strike, the Motion for Default, and the responses to the Second Motion to Strike. Affording the pro se filing a liberal construction, the undersigned will consider Plaintiffs' responses to the Second Motion to Dismiss that appear within Plaintiffs' Motion to Strike.

## IV.   MOTION FOR ENTRY OF DEFAULT SHOULD BE DENIED

Plaintiffs also assert within their Motion to Strike that the Second Motion to Dismiss was untimely filed and therefore a default should be entered against all Defendants pursuant to Rule

55(a) (ECF 42 at 1, 8).[3] As set forth below, the undersigned recommends the request for default be denied.

When an amended complaint is filed, the answer or motion to dismiss is due within fourteen days. Fed. R. Civ. P. 15(a)(3). In this case, the Amended Complaint was filed February 2, 20220. Defendants filed their Second Motion to Dismiss twenty-one days after the Amended Complaint, on February 23, 2022, (ECF 46 at 8–9). The filing of the Second Motion to Dismiss is untimely. Defendants explain the reason for the oversight was they mistakenly used the twenty-one day deadline, which is the deadline to respond to the original complaint. Defendants concede their oversight, that the filing was one week late and that a motion to dismiss an Amended Complaint should have been filed within fourteen days. Plaintiffs seek the entry of a default due to the untimely filing of the Second Motion to Dismiss (ECF 42 at 1, 8).

Default judgments are disfavored by the courts, particularly when they are used as penalties for filing delays or minor procedural errors:

> We review a court's decision to grant or deny a motion for default for abuse of discretion.
>
> Default judgments are a harsh sanction. Strong policies favor resolution of disputes on their merits: The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and

---

[3] In some courts in the Tenth Circuit and in the District of Utah, a motion for default has been considered a dispositive motion, subject to a report and recommendation from a magistrate judge. *Ward v. Lutheran Medical Center*, Case No. 18-cv-00232-CMA-STV, 2020 WL 1951580 at * 1 n.2 (D. Colo. April 23, 2020); *Baer v. Salt Lake City Corp.*, Case No. 2:13-cv-00336, CW-PMW, 2016 WL 5793656 (Oct. 4, 2016) (treating a motion for default as a dispositive motion subject to a report and recommendation). In other courts in this district, a motion for default may not be considered a dispositive motion and can therefore be ruled on directly by a magistrate judge without a report and recommendation. *Bloomquist v. Utah Third Judicial Dist. Ct.*, Case No. 2:16-cv-34-DN-PMW, 2016 WL 5905702 at *1 (D. Utah Oct. 11, 2016) (treating a motion for default as a non-dispositive motion). Out of an abundance of caution as pro se litigation, the undersigned treats Plaintiffs' request for a default judgment as a dispositive motion and issues this report and recommendation.

> continued uncertainty as to his rights. The default judgment
> remedy serves as such a protection.
>
> We do not favor default judgments because the court's
> power is used to enter and enforce judgments regardless of
> the merits of the case, purely as a penalty for delays in filing
> or other procedural error.

*Davis v. Kaiser*, 12 F. App'x 902, 904 (10th Cir. 2001) (quoting *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991)).

This is not a case where the adversary process has been halted due to an unresponsive party. Rather, the case was in active litigation when the Second Motion to Dismiss was filed. Two motions to dismiss were already filed. Plaintiffs had responded and then filed an Amended Complaint. A large volume of other pleadings and notices had already been filed before the Second Motion to Dismiss and continued to be filed after that event. For example, Plaintiffs filed two criminal complaints (ECF 44, 45), two requests for judicial notice (ECF 43, 49), one motion for sanctions (ECF 48), and one motion for stay (ECF 54). Under the circumstances of this case, the delay in filing a Motion to Dismiss the Amended Complaint was de minimis and created no prejudice to any party. The undersigned recommends the Motion for Default be Denied.

## V.      MOTION TO DISMISS SHOULD BE GRANTED

Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (ECF 36). To survive a motion to dismiss pursuant to 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The trial courts must begin their analysis under the 12(b)(6) by discounting all allegations that are no more than legal conclusions. *Moses-El v. City & Cnty. of Denver*, No. 20-1102, 2022 WL 1741944, at *7 (10th Cir. May 31, 2022). With the remaining nonconclusory factual allegations, we "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Because Plaintiffs are proceeding pro se, the court construes their pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, it is not the court's function to assume the role of advocate on behalf of pro se litigants. *See id.* The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). The court reviews the pleadings in light of these standards.

## A. No Claims Are Plead Against Davis School District or the Davis Individual Defendants

As noted earlier in this Order, the Amended Complaint identifies all Plaintiffs in the caption (ECF 39 at 1), and it is signed by all Plaintiffs (ECF 39 at 33). However, the Amended Complaint addresses only Plaintiff Tracy, Weber School District, and the Weber Individual Defendants associated with Weber School District (ECF 39 at 6–7). It alleges no injuries to the Ericksen/Brown Plaintiffs, no conduct by the Davis School District Defendants, and no conduct by the Davis Individual Defendants (ECF 39). The court is not permitted to add facts or parties to the pleadings. *Whitney*, 113 F.3d at 1173–74. For failure to plead any claims against the Davis School District,

the Davis Individual Defendants, and for failure to plead any injuries to the Ericksen/Brown Plaintiffs, the undersigned recommends this action against the Davis School District and the Davis Individual Defendants be dismissed without prejudice.

### B. No Claims Are Plead Against Weber Individual Defendants

The Amended Complaint identifies the Weber School District as a Defendant and identifies the Weber Individual Defendants (ECF 39 at ¶¶ 7–15) but alleges no specific facts elsewhere in the Amended Complaint or its several causes of action against any of the Weber Individual Defendants. Liability requires personal involvement. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). "[A] grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Id.* Plaintiffs summarily alleged grievances against the Weber Individual Defendants but provide no allegations of fact or conduct. The undersigned therefore recommends all claims against the Weber Individual Defendants be dismissed without prejudice.

### C. First Amendment

In Count One of their Amended Complaint, Plaintiffs allege violations of their civil rights through a claim brought pursuant to 42 U.S.C. § 1983. Plaintiffs allege violations of a variety of constitutional rights, including rights arising under the First Amendment (ECF 39 at ¶¶ 102–09). With respect to their First Amendment claims, Plaintiffs assert they were deprived of their right to practice their religion as they saw fit, to freely assemble, and to speak freely without fear of retribution (ECF 39 at ¶¶ 103, 106).

The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." *Virginia v. Black*,

538 U.S. 343, 358 (2003). "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Id.* The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech. *Id.* There are some exceptions in which the government can regulate speech. *Id.* at 538–63. The type of speech that is allegedly being suppressed determines the type of legal test a court is to apply. *Id.*

It is not possible to discern the First Amendment claims regarding free speech in this case because the type of speech that was allegedly suppressed is not identified. There are also contradictions within the Amended Complaint regarding Plaintiffs ability to express their views to the school districts. Plaintiffs allege that they did exercise their First Amendment rights by notifying "the Defendants,"[4] by way of affidavits, that Plaintiffs believed Defendants were operating in violation of the constitution (ECF 39 at 4–5). Plaintiffs allege their notifications were ignored and they received no responses (ECF 39 at 5). The undersigned is not able to find a suppression of speech where Plaintiffs appear to concede they were able to provide public comment.

The First Amendment's Free Exercise Clause applies if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532, (1993). To evaluate a claim under the free exercise clause, the court must be able to examine whether the object of a law is to infringe upon or restrict practices because of their religious

---

[4] It is unclear which Defendants Plaintiffs refer to in their claim. The Amended Complaint includes affidavits and a notice of claim addressed to Jeff Stephens, Superintendent of Weber County School District (ECF 1-5). The affidavits against a single Defendant does not clear up which of the several Defendants this claim is directed towards.

motivation. *Id.* The legal test to apply is then determined by whether the law is facially neutral or not. *Id.* Of particular note, the "right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Division v. Smith*, 494 U.S. 872, 879 (1990).

Plaintiffs assert that they hold a deeply-held religious belief against face coverings and that the face covering requirement impaired the exercise of their religious beliefs (ECF 39 at ¶ 53–54). There are, however, insufficient facts alleged for the court to discern what religious practices were targeted and then suppressed by the school district policies. The Amended Complaint does not direct the court to any provision of the policies that are targeted at or otherwise impacts religious practices. The undersigned is also confronted with the contradiction within the Amended Complaint that while Plaintiffs assert they were given no option for exemption from the face covering requirement (ECF 39 at ¶ 56), Plaintiffs also assert that there was an exemption process, an exemption was granted, and that Plaintiffs were scorned and ridiculed for obtaining an exemption (ECF 39 at ¶ 65).

The First Amendment also protects the freedom of assembly, but again that right is not absolute. A government may burden the rights of assembly and association "by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984). A valid Freedom of Assembly claim must assert that the school district policies do not serve compelling state interests, is related to the suppression of ideas, or excessively restricts Plaintiffs' associational or assembly rights. *Legacy Church, Inc. v. Kunkel*,

472 F. Supp. 3d 926, 1074 (D. N.M. 2020), *aff'd sub nom. Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021). Plaintiffs' Amended Complaint does not make such assertions.

The undersigned concludes the First Amendment claims must be dismissed for inadequate pleading. The court is unable to discern what was denied, such as what assembly or association was impaired, what expressive conduct was suppressed, what religious right was impaired, how the school reopening plan impaired those rights, and how any rights remained impaired after the school districts provided an exemption for which Plaintiffs allege they were ridiculed for obtaining. Plaintiffs summarily state their claims and a legal conclusion that their First Amendment rights were violated. Federal pleading requires more. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570); *Moses-El*, 2022 WL 1741944, at *7. Because Plaintiffs fail to allege facts supporting a plausible First Amendment claim, whether on a theory of expressive conduct, free exercise, or freedom of assembly, the undersigned recommends the First Amendment claims within Count One be dismissed without prejudice.

### D. Fourteenth Amendment

The undersigned similarly finds that Plaintiffs' allegations under the Fourteenth Amendment are summarily stated in Count One as conclusory allegations without sufficient information to evaluate the claims (ECF 39 at 103–09). Plaintiffs have not stated whether they were deprived of procedural due process, substantive due process, equal protection, of some combination of those. In an effort to read Plaintiff's Amended Complaint liberally, the undersigned briefly addresses each.

If Plaintiffs are alleging a violation of their procedural due process rights, which means notice and an opportunity to be heard, it appears that the school district policy they contest was

subject to public comment (ECF 1-4, -6) and that Plaintiffs did present comments or otherwise make their positions known by sending affidavits to the school districts (ECF 39 at 4–5). Plaintiffs also assert their administrative remedies have been exhausted (ECF 39 at ¶ 83). Plaintiffs have not asserted sufficient facts for the court to evaluate what notice or opportunity to be heard they had a right to and that they were not provided. "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." *Oklahoma Educ. Ass'n v. Alcoholic Beverage Law Enforcement Comm'n*, 889 F.2d 929, 936 (10th Cir. 1989). The contested school district policy in this instance appears to apply to a general class of persons (all school attendees), all of whom received procedural due process through the process of soliciting public comment and the school district's legislative process.

If Plaintiffs are asserting a violation of substantive due process, they have not identified the fundamental right that is impaired. The doctrine of substantive due process extends protections to fundamental rights in addition to the specific freedoms protected by the Bill of Rights. To qualify as "fundamental," a right must be "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Plaintiffs cite to numerous express constitutional rights but in a substantive due process challenge, the subject right must be that which the Plaintiffs are prohibited from doing. The federal courts have long required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. *Id.*

The court understands that Plaintiffs contest having to wear masks, physical distancing, remote learning, and other components of the school districts' reopening policies. However, these

15

generalized concerns lack the specificity required for a due process challenge or how this conduct meets the criteria for a fundamental right. Plaintiffs also provided no substantive response on this issue to the Second Motion to Dismiss, which would have been Plaintiffs' opportunity to narrow their claim and to point to legal authority that the right to not wear a mask or not to physically distance is a fundamental right that should be recognized such as other rights recognized under the Fourteenth Amendment: the right to marry, *Obergefell v. Hodges*, 576 U.S. 644 (2015), *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); the right to privacy and to contraception, *Griswold v. Connecticut*, 381 U.S. 479 (1965);  the right to interracial marriage, *Loving v. Virginia*, 388 U.S. 1 (1967); and so on.

In the absence of a fundamental right, the court would subject the contested legislative action, here the school districts' policies, to rational basis review.

> When local economic or social regulation is challenged as violating substantive due process, courts consistently defer to legislative determinations as to the desirability of particular statutory schemes. Unless a state law trammels fundamental personal rights, we are to presume that state legislatures have acted within their constitutional power and are to require only that the law "bears a reasonable relation to the State's legitimate purpose ...." In short, it is by now clear that the Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation' ..."

*Murphy v. Matheson*, 742 F.2d 564, 575 (10th Cir. 1984). To satisfy the rational basis test, the contested legislative action, here the school district's reopening policies, need only be rationally related to a legitimate government purpose." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). The school districts assert that the school reopening protocols are designed to serve a legitimate purpose. The contested policy that Plaintiffs attached to their original Complaint, and that they reference in their Amended Complaint, identifies that purpose (ECF 1-4, -6). It also

provides sufficient basis to find the policy rationally related to that purpose (ECF 1-4, -6). Again, Plaintiffs declined their opportunity to provide any substantive argument to support their pleading that they have been denied substantive due process.

If Plaintiffs are asserting an equal protection challenge, the undersigned finds the elements of such a challenge are lacking from the Amended Complaint. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall make or enforce a law that "den[ies] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection clause essentially directs that all persons similarly situated should be treated alike. Plaintiffs provide no indication that they were treated differently than any other students subject to the school districts' policy. Rather, the contested policy that Plaintiffs attached to their original Complaint, and that they reference in their Amended Complaint, identifies that it was a policy that was generally applied (ECF 1-4, -6). Plaintiffs also plead that they were afforded an exception to the requirements. Again, Plaintiffs provided no substantive reponse to this argument and thereby declined the opportunity to narrow their claim or provide legal authority to support their claim.

As noted above, federal pleading requires more that summarily stated legal conclusions. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570); *Moses-El*, 2022 WL 1741944, at *7. Because Plaintiffs fail to allege facts supporting a plausible due process claim, whether procedural due process, substantive due process, or equal protection, the undersigned recommends the Fourteenth Amendment claims within Count One be dismissed without prejudice.

### E.  Fourth, Ninth, and Thirteenth Amendment Claims

In Count One of their Amended Complaint, Plaintiffs summarily allege violations of their rights under the Fourth, Ninth, and Thirteenth Amendments (ECF 39 at ¶¶ 103, 105). After

reviewing the Amended Complaint and construing its assertions liberally in favor of Plaintiffs, the undersigned concludes that the § 1983 claim alleging violations under Fourth, Ninth, and Thirteenth Amendments should be dismissed for failure to state a claim.

The Fourth Amendment provides the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. After reviewing the Amended Complaint, no search or seizure is alleged by Plaintiffs. A summarily stated conclusion is inadequate pleading. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570); *Moses-El*, 2022 WL 1741944, at *7. The undersigned therefore recommends that Plaintiffs' § 1983 action based on the Fourth Amendment be dismissed without prejudice.

The Thirteenth Amendment outlaws slavery and involuntary servitude. U.S. Const. amend. XII. Plaintiffs assert they were placed into involuntary servitude as a result of the protocols for the school year (ECF 39 at ¶ 73).

> The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."

*United States v. Kozminski*, 487 U.S. 931, 942, 108 S. Ct. 2751, 2759, 101 L. Ed. 2d 788 (1988). "In every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *Id.* Plaintiffs raise no facts in their Amended Complaint to suggest they were enslaved or forced to work. Again, a summarily stated conclusion is inadequate pleading. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at

570); *Moses-El*, 2022 WL 1741944, at *7. The undersigned therefore recommends that Plaintiffs'
§ 1983 action based on the Thirteenth Amendment be dismissed without prejudice.

The Ninth Amendment provides "[t]he enumeration in the Constitution, of certain rights,
shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.
However, it does not secure a constitutional right for the purposes of a civil rights claim. *Holmes
v. Town of Silver City*, 826 F. App'x 678, 681–82 (10th Cir. 2020) ("The Ninth Amendment is not
an independent source of individual rights; rather, it provides a rule of construction that we apply
in certain cases."). The undersigned therefore recommends that Plaintiffs' § 1983 action based on
the Ninth Amendment be dismissed with prejudice because this claim does not exist within a civil
rights claim as a matter of law.

### F. Conspiracy Pursuant to 18 U.S.C. 1985

The undersigned recommends that Plaintiffs' claim for civil conspiracy (Count Two), filed
pursuant to 18 U.S.C. § 1983(3), be dismissed as a matter of law. 18 U.S.C. § 1983(3) provides:

> If two or more persons . . . conspire . . . for the purpose of depriving
> . . . any person . . . of the equal protection of the laws, or of equal
> privileges and immunities under the laws; . . . [or] cause to be done,
> any act in furtherance of the object of such conspiracy . . . the party
> so injured or deprived may have an action for the recovery of
> damages . . . .

18 U.S.C. § 1983(3). This claim has three elements: (1) a conspiracy; (2) to deprive plaintiff of
equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy;
and (4) an injury or deprivation resulting therefrom. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03
(1971). Section 1985(3) applies in narrow circumstances—to conspiracies motivated by "some
racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*,
6 F.3d 683, 686 (10th Cir. 1993). The other "class-based animus" has been narrowly construed.

The United States Supreme Court determined in 1983 that § 1985(3) claims do not apply to conspiracies motivated by an economic or commercial bias. *United Bros. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 836–37 (1983).

In this case, Plaintiffs do not allege a race-based or class-based animus, nor do they plead they are any identifiable class. Plaintiffs attempt to address class-based animus in their Amended Complaint (ECF 39 at ¶ 122) by citing to the Fifth Circuit case of *Aulson v. Blanchard*, 83 F.3d 1 (5th Cir. 1996). Plaintiffs provide a quotation from that case and then appear to quote a law review article or other case, without any citation, to suggest that race-based animus is not required (ECF 39 at  ¶ 122). Plaintiffs' have misstated *Aulson* and overlook its affirmation that a class-based animus (as opposed to a race-based animus) must impact a "distinctive and identifiable group." *Aulson*, 83 F.3d at 5–6. In this case, Plaintiffs plead no distinctive or identifiable group beyond themselves who contest the school districts' school-year protocols. Plaintiffs instead repeatedly allege a financial motivation for the school district restrictions (ECF 39 at ¶¶ 113, 115–16, 118). However, as noted above, economic or commercial motivations are not actionable under the narrow construction of § 1985(3) claims. *United Bros. of Carpenters & Joiners of Am.*, 463 U.S. at 836–37. The undersigned recommends this claim, pleaded as Count Two of the Amended Complaint, be dismissed with prejudice for failure to state a claim as a matter of law.

### G.  Title II Claim Does Not Apply

Plaintiffs assert, in their statement of background facts in the Amended Complaint, that Defendants violated the public accommodation laws of Title II of the Civil Rights Act of 1964 (ECF 39 at ¶¶ 68–72). Plaintiffs do not include a Title II claim in their express claims for relief as a stand-alone count. However, in an effort to read the Amended Complaint liberally, the

20

undersigned has considered the Title II claim as set forth in the background facts section of the Amended Complaint.

The Title II claim also fails as a matter of law. Public schools are not generally found to be places of public accommodation under Title II because, despite the name "public schools," schools are not open to the public in the ways that, for example, hotels, restaurants, and movie theaters (all establishments explicitly covered by Title II) are open to the public. *Gallegos v. Adams Cnty. School Dist. 14*, Case No. 17-cv-00306-CMA-NYW, 2017 WL 4236320 at n.4 (D. Colo. Sept. 25, 2017) (summarizing cases that affirm public schools are not places of public accommodation). Plaintiffs provide no response or substantive argument to assert that the schools should meet the definition of "public accommodation" in this district as that term of art is used in Title II.

The undersigned recommends this claim, pleaded within the Background Facts section of the Amended Complaint, be dismissed with prejudice for failure to state a claim as a matter of law.

## H.  State Law Tort Claims Barred by the Utah Governmental Immunity Act

Plaintiffs' state law tort claims are barred by the Utah Governmental Immunities Act (UGIA). Plaintiff pleads common law fraud (Count Three), common law conspiracy (Count Four), negligent infliction of emotional distress (Count Five), and intentional infliction of emotional distress (Count Six). The fraud claim (Count Three) relies on both common law fraud and cites to a federal and state statute. However, a governmental entity, its officers, and its employees are immune from suit for

> any injury or damage resulting from the implementation of or the failure to implement measures to:
>
> (i) control the causes of epidemic and communicable diseases and other conditions significantly affecting the public health or

> necessary to protect the public health as set out in Title 26A, Chapter
> 1, Local Health Departments;

Utah Code Ann. § 63G-7-201(2)(b)(i). School districts are expressly defined as political subdivisions covered by the UGIA. Utah Code Ann. § 63G-7-102(4)(a), (8).[5]

The conduct contested in this case are those measures implemented by the school districts and their employees in reponse to a communicable disease, as reflected in the policy provided by Plaintiffs with their pleadings (ECF 1-5). Plaintiffs contest whether a communicable disease exists. However, the policies they contest articulate the public health and safety concerns the polices were developed to address. To the extent Plaintiffs also plead against the Davis and Weber Individual Defendants in their personal capacities, as noted above, no specific conduct has been alleged by the Individual Defendants.

Pursuant to the express terms of the UGIA, the Weber and Davis School Districts and any of their employees are therefore immune from liability for the state tort law claims. Since the court has already dismissed the Davis School District, the Davis Individual Defendants, and the Weber Individual Defendants, the undersigned therefore recommends Claims Three, Four, Five, and Six of the Amended Complaint, be dismissed against Weber School District with prejudice as a matter of law.

## I.   State Constitutional Claims Not Adequately Pleaded

Within their § 1983 claim (ECF 39 at Count One), Plaintiffs summarily assert violations of the Utah State constitution by citing to the constitution. As with several of the federal claims,

---

[5] The Amended Complaint incorporates seven documents by reference and asserts the documents are attached to the Amended Complaint (ECF 39 at 9). The Amended Complaint was not filed with those documents and was instead filed with three summary affidavits by the three Plaintiffs (ECF 39-1, -2, and -2). In an effort to construe pro se pleadings liberally, the undersigned has referred to the seven documents attached to Plaintiffs' original complaint (ECF 1-1, -2, -3, -4, -5, -6, and -7).

the nature of the claims is not stated. Simply citing to a constitutional provision is not adequate pleading. *Iqbal*, 556 U.S. at 678. Further, a plaintiff seeking damages for a Utah constitutional violation must first prove that the constitutional provision violated is self-executing. *Blackmore v. Carlson*, No. 4:21-CV-00026-DN-PK, 2021 WL 5638497, at *24 (D. Utah Dec. 1, 2021), *Finlinson v. Millard Cnty.*, 455 F. Supp. 3d 1232, 1239 (D. Utah 2020). After proving the constitutional provisions are self-executing, the plaintiff seeking damages for a Utah constitutional violation must establish the following three elements: (1) the plaintiff suffered a flagrant violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Blackmore*, 2021 WL 5638497, at *24, *Finlinson*, 455 F. Supp. 3d at 1239. Plaintiffs in this case seek to recover $56,001,776 in damages.

Plaintiffs provide none of the necessary facts or assertions in their Amended Complaint. As noted above, the Utah constitution is cited to, with no narrative assertions of what rights were violated, how the rights were violated, or any assertions regarding the prerequisites for state constitutional claims. The pleading is inadequate to sustain the claims. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570); *Moses-El*, 2022 WL 1741944, at *7. Therefore, undersigned recommends that all state constitutional claims within Count One of the Amended Complaint be dismissed without prejudice due to inadequate pleading.

### J.  Plaintiff's Response to the Second Motion to Dismiss

As noted earlier in this order, the undersigned liberally construed Plaintiff's Motion to Strike as a multi-part filing that included Plaintiffs' response to the Second Motion to Dismiss. Plaintiffs raise many of the same arguments raised in Plaintiff's consolidated response (ECF 38)

to the first two motions to dismiss. The undersigned addresses Plaintiffs' responses in this section of this report and recommendation.

### 1.   Evidentiary Objections Improper for Motion to Dismiss

Plaintiffs assert that Defendants failed to present any evidence with their motion to dismiss and that Defendants rely on hearsay that cannot be confirmed with other evidence (ECF 42 at 6). Plaintiffs also point to Federal Rule of Evidence 602. The evidentiary objections do not include legal citations (with the exception of Rule 602) or, for the hearsay arguments, the basic elements of a hearsay objection. The court discerns that the root of Plaintiffs' argument may be "[i]f a communicable disease can't even be proven to exist, then, statutorily, there can be no 'pandemic.'" (ECF 42 at 6). This appears to be a contest on some part of the merits of the claims, not to any particular statement and otherwise meeting the definition of hearsay. Hearsay applies to specific out-of-court statements. Fed. R. Evid. 801, 802.

Further, motions to dismiss pursuant to Rule 12(b)(6) are not evidentiary proceedings. The court can appreciate that Plaintiffs, representing themselves, are unfamiliar with the procedures in civil litigation. A Rule 12(b)(6) motion seeks dismissal for failure to state a claim on which relief can be granted. It relies on the pleadings and materials within those pleadings, including the attachments Plaintiffs provided with the pleadings. To consider matters outside the pleadings, which Plaintiffs assert should have been provided by Defendants, requires conversion of the motion to one for summary judgment. Fed. R. Civ. P. 12(d). This is not that type of proceeding.

### 2.   Requests for Declaratory & Injunctive Relief Also Dismissed

Plaintiffs allege that the Second Motion to Dismiss should be denied with respect to their claim for declaratory relief, asserting that petitions for declaratory judgment are not claims for

24

relief and therefore are not subject to motions to dismiss (ECF 42, 47 at 6–7). Rather, according to Plaintiffs, declaratory judgment actions can only be dismissed sua sponte by the court (ECF 42 at 3–4).

Plaintiffs claim for declaratory and injunctive relief are not adequately plead (ECF 39 at ¶¶ 96–99). Plaintiffs do not plead for a declaration that all Defendants are subject to the federal and state constitutions (ECF 39 at ¶¶ 96–99). Rather, they state that the Defendants have violated the constitutions and Plaintiffs plead for injunctive relief (ECF 39 at ¶¶ 96–99). Requests for injunctive relief can be dismissed pursuant to motion to dismiss filed pursuant to Rule 12(b) just as the claims for damages can be dismissed. Having determined that all of Plaintiffs' federal and state claims for relief must be dismissed, the requests for injunctive relief are also dismissed.

### K. Qualified Immunity Not Considered After Deciding the Motion to Dismiss on Other Grounds

Defendants also ask the court to dismiss on the ground of qualified immunity. Having dismissed the Amended Complaint on other grounds, the undersigned declines to consider qualified immunity. While several of the claims have been dismissed with prejudice, a few have been dismissed without prejudice due to inadequate pleading. It would be premature at this time to evaluate qualified immunity for any claims dismissed without prejudice.

## VI.   MOTION FOR RULE 11 SANCTIONS IS DENIED

Plaintiffs move for Rule 11 sanctions against all Defendants, asserting that the Second Motion to Dismiss is a frivolous filing (ECF 48). Plaintiffs assert the Second Motion to Dismiss "[has] no basis in law or fact, are not presented by a proper purpose, are not warranted by existing law, and have no evidentiary support." (ECF 48 at 1–2). Plaintiffs ask for the sanction of a default judgment (ECF 48 at 2). Plaintiffs assert that the Second Motion to Dismiss relies on hearsay,

lacks any other evidentiary support, makes improper assertions of fact (about the name of Covid-19), and relies on improper case law.

The central purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument. *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991).

The court does not find that the Second Motion to Dismiss is a frivolous filing. Regarding Plaintiffs assertion that no evidence is presented by Defendants with the Second Motion to Dismiss, as noted earlier in this order, a motion to dismiss is not an evidentiary proceeding. Plaintiffs misunderstand the procedural steps of civil litigation. A motion to dismiss for failure to state a claim, which is the type of motion filed by Defendants, evaluates the adequacy of Plaintiffs' pleading. As noted earlier in this Order, to attach affidavits and other evidence risks the need to convert this matter to a summary judgment hearing. Fed. R. Civ. P. 12(d). The fact that Defendants did not attach evidentiary materials to their Second Motion to Dismiss was procedurally proper and does not make the Second Motion to Dismiss frivolous or otherwise improper.

Plaintiffs assert that using the word "Covid-19" in the Second Motion to Dismiss was improper because Plaintiffs' Amended Complaint refers only to a "virus." The undersigned is unable to conclude that was an evidentiary statement or frivolous. The Weber School District policy that Plaintiffs contest is a policy in response to the Covid-19 pandemic. The policy contested was provided by Plaintiffs to the court with their original Complaint (ECF 1-4, -6). The policy

expressly refers to Covid-19 (ECF 1-4, 1-6). It is not improper in a case contesting Covid-19 school reopening policies to refer to Covid-19 in the briefing.

Plaintiffs also assert in their reply brief (ECF 51 at 2–3) that Defendants improperly cited to unpublished decisions in their Second Motion to Dismiss. Plaintiffs assert that such opinions can only be considered as persuasive and not binding. Citations to unpublished opinions are permitted in this Circuit, as Plaintiffs note in their brief. The local rules of this District also expressly allow for citation to unpublished decisions. DUCivR 7-2(a). The distinction for published versus unpublished opinions is the persuasive value of those opinions. *E.g.*, *United States v. Austin*, 426 F.2d 1266, 1274 (10th Cir. 2005). Thus, the citation to legal authority whether published or unpublished, binding or persuasive, does not make a filing frivolous.

Plaintiffs also assert that as nonlawyers, they do not have access to unpublished decisions and that the decisions must be provided. In response, Defendants considered Plaintiffs' objection as a request for unpublished opinions pursuant to DUCivR 7-2(c). Defendants then filed a Notice Regarding Unpublished Opinions (ECF 52) and provided all unpublished opinions to Plaintiffs. The court notes that all of the decisions included the appropriate database citation. All are available on a publicly-accessible database (Westlaw) which is a database accessible by lawyers and by non-lawyers on a fee basis but also for free at certain public law libraries. Further, Defendants had an obligation under the local rules to provide those cases only upon request, which has been done by construing Plaintiffs' motion as including that request. Defendants have provided copies of those decisions to Plaintiffs. The court finds no basis for Rule 11 sanctions related to the use of unpublished decisions.

## ORDER

For the foregoing reasons, the undersigned concludes that the first two motions to dismiss (ECF 34, 36) are MOOT. The undersigned also orders that the Motion to Strike (ECF 42) is DENIED and the Motion for Rule 11 Sanctions (ECF 48) is also DENIED.

## RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the Plaintiffs' Motion for Default embedded within the Motion to Strike (ECF 42) be DENIED.   IT IS ALSO RECOMMENDED that Defendants' Second Motion to Dismiss be GRANTED (ECF 41). The undersigned recommends all claims be dismissed with prejudice with the exception that the undersigned RECOMMENDS Count One's § 1983 action attempting to allege claims under the First, Fourth, Thirteenth, and Fourteenth Amendments and the state constitutional claims be dismissed without prejudice.

## NOTICE

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 8 August 2022.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah