IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES K. TRACY,<br><br>         Plaintiff,<br><br>v.<br><br>JEFF STEPHENS, JON RITCHIE, JAN BURRELL, DEAN OBORN, DOUGLAS HURST, JANIS CHRISTENSEN, PAUL WIDDISON, BRUCE JARDINE and WEBER SCHOOL DISTRICT,<br><br>         Defendants,<br><br>ALENA ERICKSEN and MIKEL BROWN,<br><br>         Consolidated Plaintiffs,<br><br>v.<br><br>REID NEWEY, JOHN ROBISON, MARIE STEVENSON, LIZ MUMFORD, JULIE TANNER, BRIGIT GERRARD, GORDON ECKERSLEY, CHERYL PHIPPS, and DAVIS SCHOOL DISTRICT,<br><br>         Consolidated Defendants. | **ORDER AND MEMORANDUM DECISION ADOPTING AND AFFIRMING REPORT AND RECOMMENDATION**<br><br><br>Case No. 1:21-cv-00152-TC-CMR<br>Member Case No. 1:21-cv-00153-TC<br><br>District Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

On August 8, 2022, Magistrate Judge Romero issued an Order and Report and Recommendation (R&R) about several motions in this case. ECF No. 59. The R&R addresses the following motions: Defendants' Motion to Dismiss, ECF No. 34; Defendants' Consolidated Motion to Dismiss, ECF No. 36; Defendants' Motion to Dismiss the Amended Complaint, ECF No. 41 ("Motion to Dismiss"); Plaintiffs' Motion to Strike, ECF No. 42; Plaintiffs' Motion for Default, ECF No. 42; and Plaintiffs' Motion for Sanctions, ECF No. 48. On August 16, 2022, Plaintiffs, proceeding pro se, filed their written Objections to the R&R, where they object to

many of the decisions and recommendations in the R&R.  ECF No. 60.  At the court's request, ECF No. 61, Defendants responded to Plaintiffs' Objections.  Defendants oppose Plaintiffs' Objections and argue that the court should affirm the R&R's decisions and accept its recommendations.  ECF No. 62 at 2 (responding to Plaintiffs' objections).

Plaintiffs' objections to the Magistrate Judge's decisions and recommendations do not hold water.  First, Judge Romero had the authority to make the decisions and recommendations in the R&R.  Second, she made no clear errors or decisions contrary to law as to the R&R's nondispositive orders.  Third, the court agrees with the R&R's recommendations about dispositive matters.  Consequently, it adopts the R&R, denies Plaintiffs' Motion for Default and grants Defendants' Motion to Dismiss.  The court allows Plaintiffs to file a Rule 15(a)(1) motion requesting leave to amend the amended complaint, but it must be filed by November 23, 2022.

## I.   Magistrate Judge Authority

The Magistrate Judge has authority to make the rulings and recommendations at issue. See 28 U.S.C. § 636(b)(1)(B).

## II.   Orders Deciding Nondispositive Matters

The Magistrate Judge's orders denying both Plaintiffs' Motion to Strike, ECF No. 42, and Plaintiffs' Motion for Rule 11 Sanctions, ECF No. 48, are affirmed as neither clear error nor contrary to law.[1]  In evaluating a magistrate judge's written order deciding nondispositive matters "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); McCans v. City of Truth or Consequences, 360 F. App'x 964, 966 (10th Cir. 2010) (unpublished).[2]

---

[1] Plaintiffs do not take issue with the mootness of the first two motions to dismiss.  See ECF No. 60 at 5 (referencing first two such motions, see ECF Nos. 34 & 36).
[2] Unpublished decisions are cited for persuasive value.  Fed. R. App. 32.1; DUCivR 7-2(a)(2).

a.   <u>The Magistrate Judge's Denial of Plaintiffs' Motion to Strike is Affirmed.</u>

Plaintiffs' Motion to Strike, ECF No. 42, is procedurally improper; it is a motion to strike

another motion, and these are not permitted.  <u>See</u> <u>Searcy v. Soc. Sec. Admin.</u>, 956 F.2d 278, at

*2 (10th Cir. 1992) (unpublished) ("there is no provision in the Federal Rules of Civil Procedure

for motions to strike motions."); <u>Gardner v. Long</u>, No. 18-CV-00509, 2020 WL 1325338, at *6

(D. Utah Mar. 20, 2020) (noting a court must deny such a motion as Rule 12(f)(2) applies to

material in pleadings, not motions).  The court construes Plaintiffs' pleadings and papers liberally

as they are pro se.  <u>French v. Am. Airlines, Inc.</u>, 427 F. App'x 666, 667 n.1 (10th Cir. 2011)

(unpublished); <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  But this does not excuse

Plaintiffs' obligation to comply with the Federal Rules of Civil Procedure's fundamental

requirements.  <u>See</u> <u>Ogden v. San Juan Cnty.</u>, 32 F.3d 452, 455 (10th Cir. 1994).

Other factors also weigh against striking Defendants' Motion to Dismiss.  Plaintiffs assert

no prejudice due to its untimely filing, and striking it would unnecessarily prolong litigation as

its contents could be refiled as a motion for judgment on the pleadings.  <u>See</u> <u>Zemaitiene v. Salt</u>

<u>Lake Cnty.</u>, No. 217CV00007, 2020 WL 6151610, at *3 (D. Utah Sept. 24, 2020), <u>R&R adopted</u>,

No. 17-CV-7, 2020 WL 6149912 (D. Utah Oct. 20, 2020), <u>aff'd in part, vacated in part on other</u>

<u>grounds</u>, No. 21-4091, 2022 WL 1013811 (10th Cir. Apr. 5, 2022) (unreported).  Denying the

Motion to Strike was accordingly not clear error or contrary to law.

b.   <u>The Magistrate Judge's Denial of Plaintiffs' Motion for Sanctions is Affirmed.</u>

Plaintiffs asked for default judgment as a sanction.  ECF No. 48.  The finding that there

was no basis for sanctions, ECF No. 59 at 25–27, was neither clear error nor contrary to law.

First, Plaintiffs argued sanctions are appropriate because Defendants' Motion to Dismiss

was frivolous as it did not present evidence.  <u>See</u> ECF No. 48 at 1–5.  But Defendants were not

required to present evidence in this procedural posture.  See VDARE Found. v. City of Colo. Springs, 11 F.4th 1151, 1158 (10th Cir. 2021), cert. denied, 142 S. Ct. 1208 (2022) (discussing how courts consider legal sufficiency of the "complaint alone" at Rule 12(b)(6) stage).  Second, the Motion to Dismiss was not improper because it used "Covid19" as it was generally known that this virus was circulating locally and nationally.  See Morgan v. Baker Hughes Inc., 728 F. App'x 850, 857 (10th Cir. 2018) (unpublished) (citing Fed. R. Evid. 201(c)(2)) ("Facts subject to judicial notice are those 'not subject to reasonable dispute' because they are 'generally known within the trial court's territorial jurisdiction.'").  Third, declining to sanction Defendants for citing unpublished opinions was not clear error; this conduct is not sanctionable.[3]

## III.    Recommendations About Dispositive Matters

Plaintiffs object to the recommendations that (a) their Motion for Default be denied, and (b) Defendants' Motion to Dismiss be granted.  The court adopts both recommendations.  In evaluating a magistrate judge's order making recommendations on dispositive matters, a "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

a.    The Court Denies Plaintiffs' Motion for Default.

Plaintiffs seek an entry of default due to the untimely filing[4] of Defendants' Motion to Dismiss.  See ECF No. 42.[5]  Courts disfavor default judgments.  Davis v. Kaiser, 12 F. App'x 902, 904 (10th Cir. 2001) (unpublished) (citing Ruplinger v. Rains (In re Rains), 946 F.2d 731,

---

[3] These opinions were provided to Plaintiffs, ECF No. 52, and are also elsewhere available to non-lawyers.

[4] It was one week late.  Fed. R. Civ. P. 15(a)(3).  The Amended Complaint was filed February 2, 2022.  ECF No. 39.  Defendants' Motion was filed on February 23, 2022.  ECF No. 41.

[5] "Out of an abundance of caution as pro se litigation, the [Magistrate Judge] treat[ed] Plaintiffs' request for a default judgment as a dispositive motion."  ECF No. 59 at 8; see French, 427 F. App'x at 667 n.1.  This court does the same.

732 (10th Cir. 1991)).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  Id. at 904 (quoting Rains, 946 F. 2d at 732).  That is not the case here, where the parties are engaged in active litigation.  As a result, the motion for default is denied.

     b.  <u>The Court Grants Defendants' Motion to Dismiss the Amended Complaint.</u>

     Plaintiffs make numerous objections to the recommended dismissal of their claims. Procedurally, they object that the Magistrate Judge did not require Defendants to submit evidence in support of their Motion to Dismiss or hold a hearing before issuing the R&R.  <u>See</u> ECF No. 60 ¶ 6.  But Defendants are not required to submit evidence as part of their Rule 12(b)(6) motion.  <u>See</u> <u>VDARE Found.</u>, 11 F.4th at 1158 (quoting <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1201 (10th Cir. 2003)) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence . . . but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").  Magistrate Judges are also not required to hold a hearing before issuing an R&R.  <u>See</u> <u>Rudnick v. Raemisch</u>, 774 F. App'x 446, 448 (10th Cir. 2019) (unpublished) ("a hearing on a motion to dismiss is not required").

     Substantively, Plaintiffs contest the R&R's recommendations about the following: (i) the Davis School District and Davis Individual Defendants; (ii) the Weber Individual Defendants; (iii) Plaintiffs' First Amendment claims; (iv) Plaintiffs' Fourteenth Amendment claims; (v) Plaintiffs' Fourth, Ninth, and Thirteenth Amendment claims; (vi) Plaintiffs' Conspiracy claim; (vii) Plaintiffs' Title II claim; (viii) Plaintiffs' state law tort claims; (ix) Plaintiffs' state constitutional claims; and (x) Plaintiffs' requests for declaratory and/or injunctive relief.[6]

---

[6] As Plaintiffs are pro se, the Magistrate Judge considered their responses to the Motion to Dismiss as they were embedded in their Motion to Strike, even though such responses are improper.  DUCivR 7-1(a)(3).  Reading their papers liberally, the court here does the same.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP, 28 F.4th 136, 146 (10th Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 at 678).  "Under the 12(b)(6) analysis, [courts] start by discounting all allegations that are no more than legal conclusions.  With the remaining nonconclusory factual allegations, [courts] 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Moses-El v. City & Cnty. of Denver, No. 20-1102, 2022 WL 1741944, at *7 (10th Cir. May 31, 2022) (not reported) (quoting Iqbal, 556 at 679).  As plaintiffs proceed pro se, the court reads their papers liberally but "will not supply additional factual allegations to round out [Plaintiffs'] complaint or construct a legal theory on a plaintiff's behalf."  Whitney v. State of N.M., 113 F.3d 1170, 1175 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110).

(i)  Plaintiffs' Claims Against Davis School District and Davis Individual Defendants are Dismissed.

"A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case."  6 C. Wright & A. Miller, Fed. Prac. & Proc. § 1476 (3d ed. 2019); see also McCleland v. Raemisch, No. 18-CV-00233, 2019 WL 967817, at *2 (D. Colo. Feb. 28, 2019), R&R adopted, No. 18-CV-00233, 2019 WL 1489325 (D. Colo. Apr. 3, 2019) ("an amended pleading supersedes the pleading it modifies").

The Amended Complaint does not allege any conduct by Davis School District or the Davis Individual Defendants.[7]  ECF No. 39.  And it does not allege any injuries to Alena Ericksen or Mikel Brown, even though all Plaintiffs are identified in the caption and signed the Amended Complaint.  Id. at 1, 33.  The documents incorporated by reference are similarly silent as to these defendants' conduct.  See ECF Nos. 1–6.  As the Amended Complaint supersedes the complaint it modified, Plaintiffs have failed to plead facts about Davis School District and Davis Individual Defendants.  Even though Plaintiffs are pro se, the court cannot add facts or parties to their pleadings.  See Whitney, 113 F.3d at 1175.  Their claims against Davis School District and the Davis Individual Defendants are dismissed without prejudice.

    (ii)    Plaintiffs' Claims Against the Weber Individual Defendants are Dismissed.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997)).  The Amended Complaint identifies the Weber Individual Defendants.[8]  ECF No. 39 at ¶¶ 7–15.  But it does not allege specific facts or conduct about any of these individuals.  The incorporated exhibits have the same deficiency;[9]

---

[7] The Davis Individual Defendants are Reid Newey, John Robison, Marie Stevenson, Liz Mumford, Julie Tanner, Brigit Gerrard, Gordon Eckersley, and Cheryl Phipps.

[8] The Weber Individual Defendants are Jeff Stephens, Jon Ritchie, Jan Burrell, Dean Oborn, Douglas Hurst, Janis Christensen, Paul Widdison, and Bruce Jardine.

[9] The Magistrate Judge notes that in construing pro se Plaintiffs' Amended Complaint liberally, she refers to the seven documents attached to the Plaintiffs' original complaint as incorporated into their Amended Complaint.  See ECF No. 59 at 22 n.5.  Plaintiffs argue that here the Magistrate Judge is having it both ways: that the Judge is considering the original complaint to have no legal effect and considering it to have legal effect because of her references to these exhibits.  See ECF No. 60 at 14.  But Plaintiffs incorporated these exhibits into their Amended Complaint's Statement of Facts.  ECF No. 39 at ¶ 19 (stating that Exhibit-1 through Exhibit-7, ECF Nos. 1–6, "are included by reference as though fully stated herein.").  They did not similarly incorporate their original Complaint or the allegations made therein.  The Magistrate Judge properly incorporated the material from past pleadings that Plaintiffs said should be incorporated.  And she properly set the rest aside as superseded by the Amended Complaint.  See

they contain conclusory language alleging the Weber Individual Defendants harmed Plaintiffs, but almost no factual allegations.  See, e.g., Compl. Ex. 2, ECF No. 1-2.  As § 1983 liability requires nonconclusory factual allegations of personal involvement, which Plaintiffs have not included in their Amended Complaint, Plaintiffs' claims against the Weber Individual Defendants are dismissed without prejudice.

      (iii)     Plaintiffs' First Amendment Claims are Dismissed.

Plaintiffs assert that they were deprived of their "right to speak freely without fear of retribution," to "practice their religion as they saw fit," and "to freely assemble."  ECF No. 39 at ¶¶ 103, 106.  But Plaintiffs have not stated a First Amendment claim under any of these theories.

      A.  Plaintiffs' Free Speech Claim is Dismissed.

> The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." The hallmark of the protection of free speech is to allow "free trade in ideas"—even ideas that the overwhelming majority of people might find distasteful or discomforting.

Virginia v. Black, 538 U.S. 343, 358 (2003) (quoting Abrams v. United States, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)); see also Texas v. Johnson, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").  "[T]he First Amendment protects symbolic conduct as well as pure speech."

---

Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co., 21 F.4th 704, 709 (10th Cir. 2021), cert. denied, 142 S. Ct. 2779 (2022) (quoting Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1146 (10th Cir. 2013)) ("We typically consider 'only the contents of the complaint when ruling on a 12(b)(6) motion.' But we also will consider 'documents incorporated by reference in the complaint [and] documents referred to in and central to the complaint, when no party disputes [their] authenticity.'").  Though Plaintiffs' original complaint has been superseded by their Amended Complaint, Exhibit-1 through Exhibit-7, ECF No. 1–6, are incorporated by reference because of Plaintiffs' explicit reference to these Exhibits being "included by reference" in their Amended Complaint, ECF No. 39 at 9.

Black, 538 U.S. at 360 n.2.  But government can sometimes proscribe or regulate speech.  Id. at 358–60.  To assess whether a challenged speech regulation is permissible, a court must apply the legal test appropriate to the type of speech that has allegedly been impinged.  See id. at 361–62.

Plaintiffs have not identified what speech or type of speech was suppressed, meaning the court cannot apply the correct test to determine whether a regulation of it was permissible.  They have pleaded facts demonstrating that they were able to express their views to the school districts on the virus-related measures that they oppose.  See ECF No. 39 at 4–5 ("Plaintiffs exercised their First Amendment rights to seek a redress of grievances from the government by petitioning the Defendants"; "Plaintiffs sent Defendants multiple affidavits at several different times, to bring awareness to Defendants of the harm and damages [Defendants were causing]"); id. at ¶¶ 76–80 (discussing affidavits and notices of claim that Plaintiffs sent to Defendants).[10]

Plaintiffs have also not pleaded facts allowing for a plausible inference that by declining to wear masks or face coverings, or to participate in social distancing or isolation measures, they were engaged in inherently expressive conduct protected by the First Amendment.  See Rumsfeld v. F. for Acad. & Institutional Rts., Inc. (FAIR), 547 U.S. 47, 66 (2006) (extending First Amendment protection only to inherently expressive conduct); Minn. Voters All. v. Walz, 492 F. Supp. 3d 822, 837 (D. Minn. 2020), appeal dismissed, No. 20-3072, 2020 WL 9211131 (8th Cir. Nov. 9, 2020) (holding that refusing to mask during COVID-19 pandemic was, like conduct in FAIR, "not inherently expressive. Like the hypothetical observer in FAIR . . . an observer would have no idea why someone is not wearing a face covering.").

---

[10] In their Objections to the R&R, Plaintiffs confirm that they were able to express their opposition to the measures at issue, and request exemptions from these measures.  ECF No. 60 at 8 ("Plaintiffs actively objected to the mitigation efforts," they "expressed their concerns and desire to not comply [and] were met with hostility and threatened with unwanted isolation," and "there was an exemption process, [but] Plaintiffs did not seek such exemption.").

Even if such conduct was expressive, the policies challenged are constitutional under both <u>Jacobson v. Massachusetts</u>, 197 U.S. 11 (1905), and <u>United States v. O'Brien</u>, 391 U.S. 367 (1968). <u>Jacobson</u> requires courts to examine whether a measure adopted to address a public-health crisis has a "real or substantial relation" to the crisis and, if it does, whether it is "beyond all question, a plain, palpable invasion" of a constitutional right. 197 U.S. at 31. Here, the challenged policies have a real relation to the public health crisis caused by COVID-19, and if they have an impact on First Amendment rights, that impact falls far below being a "plain, palpable, invasion" of those freedoms. Under <u>O'Brien</u>,

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377. Defendants unquestionably have the constitutional authority to enact health and safety measures to protect their citizens. <u>See</u> <u>Jacobson</u>, 197 U.S. at 24–25. The challenged policies further the substantial government interest in controlling the spread of a lethal and contagious disease. <u>See, e.g.</u>, Compl. Ex. 7, ECF No. 1-6 (Utah State Plan for the American Rescue Plan Elementary and Secondary School Emergency Relief Fund). And they are unrelated to the suppression of free expression, at most incidentally restricting First Amendment freedoms while leaving Plaintiffs able to express their opinions about the policies—which Plaintiffs assert they did. <u>See</u> ECF No. 39 at 4–5. Accordingly, Plaintiffs have not stated a Free Speech claim.

### B. Plaintiffs' Free Exercise Claim is Dismissed.

"[T]he protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520,

532 (1993). These protections are not absolute. For example, "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease." Prince v. Massachusetts, 321 U.S. 158, 166–67 (1944).

To assess a Free Exercise claim, a court must examine the law that allegedly violates Plaintiffs' rights to evaluate whether the law's object "is to infringe upon or restrict practices because of their religious motivation." Hialeah, 508 U.S. 520 at 533. It must then evaluate the challenged law based on legal tests determined by whether the law is facially neutral. See id. Plaintiffs assert the Free Exercise Clause is implicated because they "hold a deeply held religious belief against the covering of their faces as this would violate their religious conscience," and that they have a "God-given right to refuse unwanted medical treatment." ECF No. 39 at ¶¶ 54, 57. But the Amended Complaint does not contain sufficient facts for the court to engage in the required analysis. Plaintiffs neither sufficiently identify the religious practices targeted and suppressed by Defendants, nor the provision(s) of the regulation(s) used by Defendants to target these practices. But Plaintiffs do identify an exemption process that would seemingly have allowed them to avoid the regulations' requirements. See ECF No. 39 at ¶ 65; ECF No. 60 at 8.[11] As such, Plaintiffs have not stated a Free Exercise claim.

### C. Plaintiffs' Freedom of Association and Assembly Claim is Dismissed.

The First Amendment protects the "right of the people peaceably to assemble." U.S. Const. amend. I. "[R]ights of association are within the ambit of the constitutional protections afforded by the First and Fourteenth Amendments." Schell v. Chief Just. & Justs. of Okla. Sup.

---

[11] Plaintiffs also argue the Magistrate Judge violated Fed. R. Evid. 610. ECF No. 60 at 9. But their Rule 610 objection is unavailing as, among other things, their religious beliefs were not discussed in the context of credibility. See United States v. Sampol, 636 F.2d 621, 666 (D.C. Cir. 1980) ("Rule 610 bars the admission of evidence of the religious beliefs of a witness for the purpose of showing that his credibility is impaired as a result of those beliefs.").

Ct., 11 F.4th 1178, 1186 (10th Cir. 2021), cert. denied sub nom. Schell v. Darby, 142 S. Ct. 1440 (2022) (quoting Gibson v. Fla. Legis. Investigation Comm., 372 U.S. 539, 543 (1963)).  This right is "not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."  Roberts v. U.S. Jaycees, 468 U.S. 609, 622–23 (1984).

Plaintiffs assert that Defendants deprived them of their right to freely assemble.  ECF No. 39 at ¶ 106; see also id. at ¶ 72 ("Defendants required that Plaintiffs, and other Weber School District students who could not/would not abide by these 'mitigation efforts', not be allowed to access public school accommodations and would be required to participate in online/at home learning, away from social interaction with teachers, staff, and other students . . . .").  But they have not pleaded facts that allow for the plausible inference that the challenged policies are not in service of compelling state interests, or that these interests could be achieved through less restrictive means.  They have also not pleaded facts that allow for the plausible inference that the policies are related to idea-suppression.  Indeed, the challenged orders did not prevent Plaintiffs from associating with their classmates, teachers, or school staff.  Those who did not abide by the "mitigation efforts" participated in school via online/at home learning.  See Peterson v. Kunkel, 492 F. Supp. 3d 1183, 1198–99 (D.N.M. 2020) ("[challenged COVID-19 school policies] d[id] not prevent [Plaintiffs] from associating with [their] classmates—[they could] continue to associate and assemble with them virtually or at another location.").

Moreover, Plaintiffs appear to assert that Defendants stopped them from associating for the purpose of obtaining an education.  "[P]hysically assembling for the purpose of attending school does not inherently implicate expressive conduct or association. Rather, Plaintiffs[']

asserted claim seems to indicate 'a generalized right of social association,' which the Supreme

Court has held finds no protection under the First Amendment." Id. (citing City of Dall. v.

Stanglin, 490 U.S. 19, 25 (1989)); see also Coleman v. Utah State Charter Sch. Bd., No. 10-CV-

1186, 2011 WL 4527421, at *4 (D. Utah Sep. 28, 2011) (holding—where school board required

a school director's removal, and the director alleged that the removal infringed on her ability to

generally associate with students, teachers, and others—that the director did not allege a

violation of constitutionally protected rights as the Constitution does not recognize such a

generalized right of social association).  Consequently, Plaintiffs have not stated a freedom of

association and assembly claim.  Their First Amendment claims are dismissed without prejudice.

   (iv)  <u>Plaintiffs' Fourteenth Amendment Claims are Dismissed.</u>

  "The Fourteenth Amendment forbids 'any State [from] depriv[ing] any person of life,

liberty, or property, without due process of law.'"  Shively v. Utah Valley Univ., No. 20-4088,

2022 WL 1021614, at *2 (10th Cir. Apr. 6, 2022) (not reported) (quoting U.S. CONST. amend.

XIV, § 1).  Reading the Amended Complaint liberally, see Hall, 935 F.2d at 1110, the court

discerns that Plaintiffs imply that they suffered violations of procedural due process, see, e.g.,

ECF No. 39 at ¶¶ 24–29, 42 (alleging lack of proper procedures), of substantive due process, see,

e.g., id. at ¶ 57 (alleging Plaintiffs' right to refuse unwanted medical treatment), and of their

equal protection rights, see, e.g., id. at ¶¶ 52, 67 (alleging Plaintiffs suffered unequal treatment).

But Plaintiffs must do more than summarily state conclusions in order to state a claim, they must

plead factual content that allows the court to draw a reasonable inference that Defendants are

liable for the misconduct Plaintiffs allege.  See Roark-Whitten, 28 F.4th at 146 (citing Iqbal, 556

U.S. at 678).  Plaintiffs have not done so, and as a result they have not stated a procedural due

process, substantive due process, or equal protection claim under the Fourteenth Amendment.

A.  <u>Plaintiffs Have Not Stated a Procedural Due Process Claim.</u>

Plaintiffs contend that they were not afforded the opportunity to object to the challenged

policies in a properly held court proceeding.  <u>See</u> ECF No. 39 at ¶ 47 ("At no time did

Defendants . . . have a court ordered judgement against Plaintiffs."); <u>see also</u> ECF No. 60 at 10.

But due process does not always require a court proceeding.  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S.

319, 334 (1976).  The procedural protections due under the Fourteenth Amendment are flexible

and the amount and type of process due depends on the situation's demands.  <u>See</u> <u>id.</u>; <u>Hernandez</u>

<u>v. Grisham</u>, 508 F. Supp. 3d 893, 979 (D.N.M. 2020) (collecting cases supporting the proposition

that "[d]uring the COVID-19 pandemic, district courts across the country have denied procedural

due process claims relating to state governments' COVID-19 policies.").  When a legislative

body passes a law affecting a "general class of persons, those persons have all received

procedural due process—the legislative process."  <u>Okla. Educ. Ass'n v. Alcoholic Beverage L.</u>

<u>Enf't Comm'n</u>, 889 F.2d 929, 936 (10th Cir. 1989) (quoting 2 R. Rotunda, J. Novak & J. Young,

<u>Treatise on Constitutional Law: Substance and Procedure</u> § 17.8 at 251 (1986)); <u>see</u> <u>Onyx Props.</u>

<u>LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.</u>, 838 F.3d 1039, 1046 (10th Cir. 2016) (observing

that some actions by municipal boards are legislative in nature and holding adoption of general

zoning ordinance to be legislative action).

Here, the policies challenged by Plaintiffs applied to a general class, consisting of all

school attendees within the District.  <u>See generally</u> ECF No. 1-4 (detailing school reopening

plan).  Plaintiffs, like all school attendees, received procedural due process through the school

district's legislative process, which involved giving the community notice of the plan and

soliciting public comment.  <u>See, e.g.</u>, <u>id.</u> at 2 ("July 10, 2020- Reopening plan went out to

parents, staff and community for feedback.; July 29, 2020- Reopening plan was presented to

Weber Board of Education for approval.").  Plaintiffs have not pleaded facts from which a court could plausibly infer that they did not receive sufficient procedural due process.  See Hernandez v. Grisham, 494 F. Supp. 3d 1044, 1145–46 (D.N.M. 2020) (determining plaintiff-students were not entitled to individual hearings on returning to in-person school during COVID-19 and, as the challenged school policies were statewide, the policies were not subject to traditional notice and hearing requirements).  They have not stated a procedural due process claim.

B.  Plaintiffs Have Not Stated a Substantive Due Process Claim.

Plaintiffs contend that the school districts' reopening policies violated many of their rights.  Plaintiffs allege their rights were violated when they were not allowed to access their "substantive" right to public school accommodations without social distancing, and by school district policies that established, among other things, "quarantine . . . when the threshold of the number of allowable confirmed cases was above the allowable number set per school by the Utah state school board."  See ECF No. 39 at ¶¶ 33, 49, 103.  They also allege violations of their "right to govern their property [bodies] as they saw fit," see id. at ¶ 106 (parentheses in original), and their "right to refuse unwanted medical treatment," including "mandatory testing," and the "long-term use of face coverings" that "would harm them," id. at 3, ¶¶ 49, 57, 58.

"In addition to guaranteeing fair procedures, the Due Process Clause of the Fourteenth Amendment 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'"  Dias v. City & Cnty. of Denver, 567 F.3d 1169, 1181 (10th Cir. 2009) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998).  Substantive due process "guards against arbitrary legislation by requiring a relationship between a statute and the government interest it seeks to advance."  Id. (citing Washington v. Glucksberg, 521 U.S. 702, 721 (1997)).  "Legislative action is tested under a two-part

substantive due process framework . . . . [W]e ask whether a fundamental right is implicated. If it

is, we apply strict scrutiny to test the fit between the enactment's means and ends. Otherwise, we

use a rational basis test" where the statute is merely required to bear a rational relation to a

legitimate government interest.  Id. at 1181–82 (citing Glucksberg, 521 U.S. at 721).[12]

 In deciding whether a right is fundamental for Fourteenth Amendment purposes, "the

Court has long asked whether the right is 'deeply rooted in [our] history and tradition' and

whether it is essential to our Nation's 'scheme of ordered liberty.'"  Dobbs v. Jackson Women's

Health Org., 142 S. Ct. 2228, 2246 (2022) (quoting Timbs v. Indiana, 139 S.Ct. 682, 686

(2019)).  "[A] 'careful description' of the asserted fundamental liberty interest" must be

provided; "vague generalities . . . will not suffice."  Chavez v. Martinez, 538 U.S. 760, 775–76

(2003) (citing Glucksberg, 521 U.S. at 721).

Plaintiffs do not provide a sufficiently "careful description" of the fundamental liberty

interests that they allege have been violated.  They also fail to describe how the proscribed

conduct meets the above noted criteria for a fundamental right or is analogous to rights

recognized as fundamental under the Fourteenth Amendment, such as the rights to marry or to

privacy and contraception.  See Obergefell v. Hodges, 576 U.S. 644, 671 (2015) (recognizing

---

[12] This fundamental-right test is appropriate here because the challenged school district policies
are "'attempt[s], through policy, to achieve a stated government purpose,' like a legislative act."
Valdez v. Grisham, No. 21-2105, 2022 WL 2129071, at *4 n.4 (10th Cir. June 14, 2022) (not
published) (quoting Abdi v. Wray, 942 F.3d 1019, 1028 (10th Cir. 2019)) (deciding a district
court did not abuse its discretion in applying the fundamental-right test to a challenge to a
"Public Health Emergency Order Requiring All School Workers Comply with Certain Health
Requirements and Requiring Congregate Care Facility Workers, Hospital Workers, and
Employees of the Office of the Governor Be Fully Vaccinated" issued by the Acting Secretary of
the New Mexico Department of Health, as the Order was like a legislative act); Halley v.
Huckaby, 902 F.3d 1136, 1153 (10th Cir. 2018) ("[The Tenth Circuit] appl[ies] the fundamental-
rights approach when the plaintiff challenges legislative action, and the shocks-the-conscience
approach when the plaintiff seeks relief for tortious executive action.").

right to marry as fundamental); Griswold v. Connecticut, 381 U.S. 479, 485 (1965) (observing

contraception "concerns a relationship lying within the zone of privacy created by several

fundamental constitutional guarantees.").[13]  As a result, the court applies rational basis review.

"To satisfy the rational basis test, 'the [challenged policies] need only be rationally

related to a legitimate government purpose.'"  Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir.

2004) (quoting Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1210 (10th Cir. 2002)).  This

test is deferential to a legislature and presumes it has acted within its constitutional power.

Murphy v. Matheson, 742 F.2d 564, 575 (10th Cir. 1984).  This test does not empower courts "to

sit as a 'superlegislature to weigh the wisdom of legislation.'"  Ferguson v. Skrupa, 372 U.S.

726, 731 (1963) (quoting Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423 (1952)).

"Stemming the spread of COVID–19 is [not only legitimate, it is] unquestionably a compelling

interest."  Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020) (describing

government interest while applying strict scrutiny to New York COVID-19 policies challenged

under Establishment Clause).  The school districts' policies describe at length how school and

other government entities worked to establish health and safety protocols that supported student

learning.  See ECF No. 1-6 at 21 ("The Utah State Board of Education (USBE) will continue to

support LEAs [Local Education Agencies] in implementing prevention and mitigation policies

for the reopening and operation of school facilities to effectively maintain the health and safety

of students, educators, and other staff."); ECF No. 1-4 at 6 ("We would work with the local

---

[13] Further supporting the court's determination that Plaintiffs have not plausibly alleged that their
"fundamental" rights have been violated is persuasive precedent holding that the interests listed
by Plaintiffs—the rights to refuse to wear a mask or to access in-person learning—are not
fundamental.  See, e.g., Klassen v. Trs. of Ind. Univ., 549 F. Supp. 3d 836, 889 (N.D. Ind. 2021),
vacated & remanded on other grounds, 24 F.4th 638 (7th Cir. 2022) (collecting cases that have
held there is no fundamental constitutional right to not wear a mask or not be tested for a virus).

health department and follow their guidance[ to contain potential COVID-19 outbreaks]. We will also follow the steps outlined in the attached flow chart to reduce risk of spread if students/staff show symptoms.").  These policies are rationally related to that legitimate governmental interest.

From the Amended Complaint's facts, the court cannot plausibly infer that Defendants impaired Plaintiffs' fundamental rights or enacted and implemented policies not rationally related to a legitimate government interest.  Plaintiffs' substantive due process claim fails.

### C.   Plaintiffs Have Not Stated an Equal Protection Claim.

Plaintiffs contend that "Defendants gave no option to decline this medical treatment [face masks] without suffering discrimination and un-equal treatment compared to other similarly situated students."  ECF No. 39 at ¶¶ 52, 67.  The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  It "creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007) (citing Vacco v. Quill, 521 U.S. 793, 799 (1997)).  Here, Plaintiffs have not alleged facts indicating that they were treated differently than others covered by the challenged policies, rather, the facts they plead show that the policies were generally applied, and that Plaintiffs were granted exemptions. See ECF No. 1-4; ECF No. 39 at ¶ 65.  Their open-ended allegations of discrimination are insufficient to state an equal protection claim, as they "provide no suggestion as to what the grounds for an equal protection violation might be."  Robbins v. Oklahoma, 519 F.3d 1242, 1253 (10th Cir. 2008) (dismissing equal protection claim where complaint contained only open-ended allegations of equal protection violation and failed to explain characteristics of similarly situated individuals and how they were allegedly treated differently than plaintiff).

As Plaintiffs have failed to state a claim under any of the theories discussed above, their Fourteenth Amendments claims are dismissed without prejudice.

(v)      Plaintiffs' Fourth, Ninth, and Thirteenth Amendment Claims are Dismissed.

Plaintiffs allege violations of their Fourth, Ninth, and Thirteenth Amendment rights.  ECF No. 39 at ¶¶ 73, 103 ("Plaintiffs had a right . . . to be secure in their persons and papers"; "[They] had . . . a right not to be forced into involuntary servitude"); id. at ¶ 105 ("Defendants worked to deny Plaintiffs their rights . . . guaranteed by the First, Fourth, Ninth, Thirteenth, and Fourteenth Amendments").  The Fourth Amendment protects the right to be free from unreasonable search and seizure.  U.S. CONST. amend IV.  The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. CONST. amend IX.  And the Thirteenth Amendment outlaws slavery and involuntary servitude.  U.S. CONST. amend XIII.  Reading the Amended Complaint liberally, see Hall, 935 F.2d at 1110, Plaintiffs fail to state a claim under any of these three Amendments.

Plaintiffs' Fourth Amendment claim fails because they allege no facts related to a search or seizure.  Their Ninth Amendment claim fails because the Ninth Amendment is not an independent source of individual rights.  See Holmes v. Town of Silver City, 826 F. App'x 678, 681–82 (10th Cir. 2020) (unpublished) ("[Plaintiff] cannot pursue a claim for an alleged violation of the Ninth Amendment in a suit under § 1983").  And their Thirteenth Amendment claim fails because Plaintiffs plead no facts alleging or supporting a plausible inference that they were enslaved, forced to work lest they be subject to legal sanction, or forced into "compulsory labor akin to African slavery."  See United States v. Kozminski, 487 U.S. 931, 942–43 (1988) ("in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction.").

19

Summarily stating a conclusion is inadequate pleading under Iqbal. 556 U.S. at 678. As Plaintiffs do little more than summarily state conclusions about their Fourth, Ninth, and Thirteenth Amendment-related allegations, these claims fail. Their Fourth and Thirteenth Amendment claims are dismissed without prejudice. Their Ninth Amendment claim is dismissed with prejudice because, as a matter of law, this claim does not exist within a civil rights claim.

      (vi)     Plaintiffs' Conspiracy Claims (Count 2) are Dismissed.

Plaintiffs allege a conspiracy to violate their civil rights under 42 U.S.C. § 1985(3). ECF No. 39 at ¶¶ 110–23. But their § 1985(3) claim fails as they fail to allege a race- or class-based animus, or to plead facts that would plausibly establish their membership in an identifiable class.

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff[s] of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (citing Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)). As for the second element, "§ 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Griffin, 403 U.S. at 101–02). Although Plaintiffs argue to the contrary, "[t]he other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias." Id. (citing United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott, 463 U.S. 825, 837 (1983)); see also Cook v. Baca, 512 F. App'x 810, 822 (10th Cir. 2013) (unreported) (confirming § 1985(3) was not intended "to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities."); Ramirez v. City of Wichita, 78 F.3d 597 (10th Cir. 1996) (unpublished) ("A

plaintiff must establish a class-based or racially discriminatory motive behind the conspiratorial activities to establish this element."); Garcia v. Yniquez, No. 22-1041, 2022 WL 2734636, at *2 (10th Cir. July 14, 2022) (unpublished) (affirming dismissal of § 1985(3) claim for, among other things, failing to allege specific facts of discriminatory animus based on membership in protected class). Plaintiffs do not allege a conspiracy motivated by racial or class-based discrimination; they say "[t]he conspiratorial purpose was financial," ECF No. 39 at ¶¶ 111, 115 ("Defendant's motivations were purely financial"). Because of this, as a matter of law, Plaintiffs have failed to state a § 1985(3) claim. Count Two of the Amended Complaint is dismissed with prejudice.[14]

(vii)    Plaintiffs' Title II Claims are Dismissed.

Despite alleging Defendants violated Title II of the Civil Rights Act of 1964, ECF No. 39 at ¶¶ 68–72, Plaintiffs concede they have not stated a Title II claim, ECF No. 60 at 13 ("Plaintiffs didn't claim any specific violation of this law . . . ."). The court agrees; they fail to state this claim. Public schools are generally not considered to be places of public accommodation under Title II, this claim is dismissed with prejudice because it fails as a matter of law. See Gallegos v. Adams Cnty. Sch. Dist. 14, No. 17-CV-00306, 2017 WL 4236320, at *5 n.4 (D. Colo. Sept. 25, 2017) (collecting cases finding public schools are not places of public accommodation under Title II, but observing the Tenth Circuit does not appear to have adjudicated the issue).

(viii)    Plaintiffs' State Law Tort Claims are Dismissed.

Counts 3–6 are four state law tort claims: common law fraud, common law conspiracy, and infliction of emotional distress—both negligent and intentional. ECF No. 39 at ¶¶ 124–56.

---

[14] In Count 2 and elsewhere Plaintiffs seem to also argue that Defendants violated 18 U.S.C. §§ 241 and 242. See ECF No. 39 at ¶¶ 120, 126. But "these criminal statutes, like other such statutes, do not provide for a private civil cause of action." Henry v. Albuquerque Police Dep't, 49 F. App'x 272, 273 (10th Cir. 2002) (unpublished).

These claims are barred by the Utah Governmental Immunities Act (UGIA).  The UGIA immunizes governmental entities, officers, and employees from suit, "for any injury or damage resulting from the implementation of or the failure to implement measures to . . . control the causes of epidemic and communicable diseases and other conditions significantly affecting the public health or necessary to protect the public health."  Utah Code Ann. § 63G-7-201(2)(b)(i) (eff. May 5, 2021) (formerly at § 63G-7-201(2)(b)(i)) (eff. Aug. 19, 2020–May 4, 2021); § 63G-7-201(2)(a)) (eff. Mar. 28, 2020–Aug. 18, 2021); § 63G-7-201(2)(a) (eff. May 14, 2019–Mar. 27, 2020)).  Under the UGIA, "governmental entit[ies]" include "the state and its political subdivisions."  Utah Code Ann. § 63G-7-102(4)(a).  The UGIA expressly includes "school district" as a type of "political subdivision."  Utah Code Ann. § 63G-7-102(8).

Between 2019 and 2022, these provisions of the UGIA were not substantively amended. A reference to a provision of the Utah Code granting broad immunity from civil liability for COVID-19 exposure was added to the UGIA during this time, but it is not at issue here.  See Utah Code Ann. § 63G-7-201(2)(a) (stipulating that a governmental entity, its officers, and its employees are immune from suit as provided in Utah Code Ann. § 78B-4-517, which provides immunity from civil liability for COVID-19 exposures).  The 2020 UGIA and the current UGIA provide the same immunity for injuries or damage resulting from governmental action or inaction in the face of epidemics and communicable diseases.  And the actions challenged by Plaintiffs fall squarely within the UGIA's protections.  As documented in the Exhibits incorporated by reference into the Amended Complaint, school districts and their employees developed the challenged policies in response to public health and safety concerns about a communicable disease.  See, e.g., ECF No. 1-4 at 26 ("the following requirements and recommendations can help mitigate the spread of COVID-19 and other illnesses.").  The Weber

22

and Davis School Districts, and their employees, are immune from liability for Plaintiffs' state law tort claims because of the UGIA's protections.  Plaintiffs' state law tort claims are dismissed with prejudice against Weber School District.[15]

      (ix)    <u>Plaintiffs' State Constitutional Claims are Dismissed.</u>

Plaintiffs allege that Defendants violated their rights under the Utah Constitution, including those guaranteed by Article 1, Sections 1, 4, 7, 15, 25 and 27.  ECF No. 39 at ¶¶ 103, 106.  Plaintiffs have not expanded upon the nature of these claims as they must to adequately state their claim; summarily stating conclusions without pleading factual content that would allow a court to draw an inference that Defendants are liable for the misconduct alleged is insufficient to state a claim.  See <u>Iqbal</u>, 556 U.S. at 679.  Moreover,

> Utah law requires a plaintiff seeking damages for a Utah constitutional violation to "clear two hurdles." "First, the plaintiff must prove that the constitutional provision violated is self-executing." "Next, a plaintiff must establish the following three elements: (1) the plaintiff suffered a flagrant violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."

<u>Blackmore v. Carlson</u>, 574 F. Supp. 3d 1012, 1051 (D. Utah 2021) (quoting <u>Jensen ex rel. Jensen v. Cunningham</u>, 2011 UT 17, ¶ 48, 250 P.3d 465, 478 (cleaned up)).  Plaintiffs clear neither hurdle; they plead no facts about these provisions' self-executing nature, nor do they establish hurdle two's required elements.  Accordingly, these claims are dismissed without prejudice.

      (ix)    <u>Plaintiffs' Claims for Declaratory and Injunctive Relief are Dismissed.</u>

Where substantive claims have failed, a request for declaratory relief in relation to those claims is not viable.  <u>Long v. Wells Fargo Bank, N.A.</u>, 670 F. App'x 670, 671–72 (10th Cir.

---

[15] As the court has already held, all claims against Davis School District, Davis Individual Defendants, and Weber Individual Defendants are dismissed without prejudice because no specific conduct has been alleged against them.

2016) (unpublished); <u>Adams v. FedEx Ground Package Sys., Inc.</u>, 546 F. App'x 772, 777 (10th Cir. 2013) (unpublished) (determining declaratory judgment claim failed as there were no rights left to be declared under other failed claims).  The same is true for injunctive relief.  <u>See, e.g.</u>, <u>E.M. v. Espanola Pub. Sch. Dist.</u>, No. CV 06-0690, 2008 WL 11413510, at *7 (D.N.M. Feb. 26, 2008) ("To maintain a claim for damages in the form of injunctive relief . . . Plaintiffs must first allege an underlying cause of action against [the defendant] that merits injunctive relief.").  In such cases, requests for these forms of relief can be dismissed under Rule 12(b).  <u>See, e.g.</u>, <u>Curiale v. Hawkins</u>, 139 F. App'x 21, 24 (10th Cir. 2005) (unpublished) (affirming dismissal of requests for injunctive relief); <u>Long</u>, 670 F. App'x 672 (affirming dismissal of request for declaratory relief).  The court has dismissed all of Plaintiffs' claims.  This means that Plaintiffs are not entitled to relief in any form—declaratory, injunctive, or otherwise.  Consequently, any requests Plaintiffs make for declaratory or injunctive relief are dismissed without prejudice.[16]

---

[16] Plaintiffs' request for declaratory relief can be dismissed on alternative grounds: even reading the complaint liberally, they have not pleaded for this relief.  The Amended Complaint says: "Must the Defendants comply with Utah law, Federal law, the United States Constitution and the Utah State Constitution? The Plaintiffs contend yes, but Defendants did not."  ECF No. 39 at ¶ 100.  This is immediately followed by the related request for relief: "Therefore, Plaintiffs are entitled to injunctive relief against Defendants, to enjoin the Defendants from enforcing unconstitutional mandates against Plaintiffs and all others similarly situated." <u>Id.</u> at ¶ 101.  Here, Plaintiffs declare that Defendants have violated these laws, and argue they are entitled to injunctive relief.  They do not also argue that they are entitled to declaratory relief.  While Plaintiffs do not need to invoke the Declaratory Judgments Act by name for declaratory relief, <u>see</u> <u>Smith v. U.S. Immigr. & Customs Enf't</u>, 429 F. Supp. 3d 742, 763 (D. Colo. 2019), they have not asked the court to provide a declaration.  That they are not asking the court for this relief is confirmed by the Objections to the R&R, where Plaintiffs state "it is blatantly obvious that all Defendants are subject to the Federal Constitution as well as the Utah Constitution," rather than asking the court to declare this fact.  <u>See</u> ECF No. 60 at 16–17.  But regardless of any request for relief's inadequacy, Plaintiffs are not entitled to relief as the court dismissed their claims.

**IV.     The Court Allows Plaintiffs to File a Rule 15(a)(2) Motion for Leave to Amend the Amended Complaint But Requires That it Be Filed By November 23, 2022.**

Within their Opposition to the R&R, Plaintiffs embed a request for leave to amend their amended complaint under Fed. R. Civ. P. 15(a)(2).  ECF No. 60 at 18.  They have already amended their complaint once "to satisfy any of the weaknesses that opposing counsel . . . point[ed] out."  Opp. To Defs.' Mot. Dismiss & Mem. in Support, ECF No. 38 at 3.

"District courts 'should freely give leave [to amend] when justice so requires.'" Castanon v. Cathey, 976 F.3d 1136, 1144 (10th Cir. 2020) (quoting Fed. R. Civ. P. 15(a)(2)). "But limits exist."  Id. (citing Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 706 (10th Cir. 2014)).

> Rule 15(a) allows [a] judge to deny a motion to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."

Stafford v. Saffle, 34 F.3d 1557, 1560 (10th Cir. 1994) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  The court cannot evaluate these factors because Plaintiffs failed to abide by the procedural requirements applicable to parties requesting leave to amend.  See DUCivR15-1; DUCivR 7-1(a)(3).  Specifically, DUCivR15-1(a)(1) requires the following from a party moving for leave to amend a pleading: they must attach the proposed amended pleading to a motion requesting this leave.  See Castanon, 976 F.3d at 1145 (affirming denial of leave to amend and holding "district court didn't abuse its discretion by relying in part on [movant's] failure to attach the proposed amendment" in disallowing amendment of complaint where movant violated local rule requiring proposed amendment's attachment when moving for leave to amend under Rule 15).  While pro se parties are exempt from having to submit a redline of the proposed pleading, they are not also excused from the requirement that they attach the proposed amended pleading as an exhibit to their motion requesting this leave.  See DUCivR 15-1(b); DUCivR 15-1(a)(2).

Plaintiffs' failure to attach their proposed pleading prevents the court from assessing whether "justice so requires" that Plaintiffs be given leave to amend, Fed. R. Civ. P. 15(a)(2), or whether leave should be denied, see Stafford, 34 F.3d at 1560.  For example, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 416 (10th Cir. 1984)). Without the proposed pleading, the court cannot evaluate whether Plaintiffs knew or should have known of the facts upon which their proposed amendment is based when they filed the original complaint, and whether leave to amend should consequently be denied on this basis.  The failure to attach a proposed pleading and "comply with the local rule [also] prevent[s] the district court from assessing the futility of an amendment."  Castanon, 976 F.3d at 1144.  Mindful of Rule 15's "liberal amendment policy," Max Oil Co. v. Range Prod. Co., 681 F. App'x 710, 716 (10th Cir. 2017) (unreported), and that Plaintiffs are pro se, French, 427 F. App'x at 667 n.1, the court does not deny Plaintiffs' request to amend at this time.  But Plaintiffs must comply with the local rules and the Federal Rules of Civil Procedure.  Ogden, 32 F.3d at 455.  The court will allow Plaintiffs to file a Rule 15(a)(1) motion for leave to amend their amended complaint, provided that they do so by November 23, 2022.  Any such motion must comply with DUCivR15-1 and all procedural rules governing litigants.  If Plaintiffs do not file such a motion by November 23, 2022, the court will deny Plaintiffs' request to amend as it is embedded in their Objections to the R&R.

Based on the above, the court **ORDERS** the following:

The order denying the Motion to Strike, ECF No. 42, and the Motion for Rule 11 Sanctions, ECF No. 48, is AFFIRMED. The R&R, ECF No. 59, is ADOPTED. The court DISMISSES the case:

(i) Plaintiffs' claims against the Davis School District and the Davis Individual Defendants are dismissed without prejudice;

(ii) Plaintiffs' claims against the Weber Individual Defendants are dismissed without prejudice;

(iii) Plaintiffs' First Amendment claims are dismissed without prejudice;

(iv) Plaintiffs' Fourteenth Amendment claims are dismissed without prejudice;

(v) Plaintiffs' Fourth and Thirteenth Amendment claims are dismissed without prejudice, while their Ninth Amendment claim is dismissed with prejudice;

(vi) Plaintiffs' § 1985(3) claim (Count 2) is dismissed with prejudice;

(vii) Plaintiffs' Title II claim is dismissed with prejudice;

(viii) Plaintiffs' state law tort claims (Counts 3, 4, 5, and 6), are dismissed with prejudice against Weber School District;

(ix) Plaintiffs' Utah Constitution claims are dismissed without prejudice; and,

(x) Plaintiffs' requests for declaratory or injunctive relief are dismissed without prejudice.

The court also ORDERS that Plaintiffs may file a Rule 15(a)(2) motion for leave to amend their amended complaint by November 23, 2022.  If they do not file a Rule 15(a)(2) motion that complies with federal and local rules of civil procedure by that time, their request to amend as it is embedded in the Objections to the R&R will be denied.  Defendants ask the court to dismiss on the grounds of qualified immunity, it declines to do so as it has dismissed on other grounds.

DATED this 1st day of November, 2022.

BY THE COURT:

TENA CAMPBELL
United States District Judge

27